A05A0225. IN THE INTEREST OF C. T. M. et al., children.
(614 SE2d 812)

MILLER, Judge.

A juvenile court terminated the parental rights of both mother and father as to the children C. T. M. and T. W. M. Only the mother appeals the juvenile court's order, contending that the State did not show by clear and convincing evidence that the termination was warranted. We find no error and therefore affirm.

A juvenile court's termination of parental rights is a two-step process:

> The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.

(Footnotes omitted.) *In the Interest of T. F.*, 250 Ga. App. 96, 97-98 (1) (550 SE2d 473) (2001). See OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv). "On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost." (Footnote omitted.) *In the Interest of F. C.*, 248 Ga. App. 675 (549 SE2d 125) (2001).

1. *Parental Misconduct or Inability.* Construing the evidence in the light most favorable to the juvenile court's findings, we address each of the relevant factors in turn.

(a) *Deprivation.* In May 2002, the juvenile court found that both children were deprived as a result of neglect, including inadequate housing and the mother's substance abuse, and ordered that the children be placed in the temporary legal custody of the Georgia Department of Human Resources (the "Department"). As this order was not appealed, the mother was bound by its findings of fact for purposes of the termination hearing. See *In the Interest of R. G.*, 249 Ga. App. 91, 93 (1) (a) (547 SE2d 729) (2001).

(b) *Lack of Parental Care or Control.* The court order determining that both children were deprived also found that they were "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for their physical, mental or emotional health or morals." The mother was also bound by this finding for purposes of the termination hearing. *In the Interest of R. G.*, supra, 249 Ga. App. at 93.

The evidence also reveals that between the May 2002 deprivation finding and the January 2004 termination hearing, the mother failed to achieve any of the goals set out in any of her reunification plans. Specifically, the mother dropped out of both drug treatment programs in which she was enrolled, failed to obtain or maintain gainful employment or stable housing, failed to pay child support, and failed to complete her counseling requirements. The mother was also arrested for probation violations arising from convictions for terroristic threats and obstruction. She pled guilty and served 90 days.

At one point, the mother requested that her own mother's home be evaluated as a possible placement for the children. Shortly after receiving approval for the placement, however, the mother changed her mind on the ground that the grandmother had abused the mother herself as a child. The following year, the grandmother's home was again evaluated for placement, but was rejected due to allegations that the grandmother's son sold drugs from the house and that the grandmother's husband had molested an 11-year-old stepsibling of the children. Though the grandmother had not provided any evidence up to that time that she had separated from or divorced this man, and though she could not work due to a back injury, she filed a petition to adopt the children on November 14, 2003, a few months after learning that the Department planned to initiate termination proceedings. Both the caseworker and the children's guardian ad litem testified that the grandmother's petition was a subterfuge to circumvent termination, and the juvenile court so found.

During scheduled visitation, the mother told the children that the Department was trying to keep them from her. Thereafter, the Department supervised virtually all subsequent visits. The foster mother testified that the children became "clingy" or "aggressive" after their visits with the mother, and were under treatment for psychological and sleep disorders. The caseworker testified that neither child initiated any affectionate contact with the mother or grandmother. Both children said that though they liked seeing their mother, they did not want to live with her or their grandmother.

Based on this evidence, a rational trier of fact could have found clear and convincing evidence that the mother's lack of proper parental care or control caused these children to be deprived. See OCGA § 15-11-94 (b) (4) (C) (i)-(iii).

(c) *Lack of Care or Control Likely to Continue.* Evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to the parents. See *In the Interest of A. A.*, 252 Ga. App. 167, 172 (2) (c) (555 SE2d 827) (2001). From well before the deprivation hearing until the termination hearing, there was sufficient evidence to authorize the juvenile court's finding that the lack of proper parental care or control was likely to continue. Even though there was evidence that the mother paid attention to her children at her visitation sessions, such an effort is not conclusive of parental fitness in light of her history of neglect, as when she considered placing the children with the woman who had abused her as a child; her failure to meet any of the goals outlined in the reunification plan; and her relapse into criminal behavior while she was failing to meet the goals of her case plans, as when she was arrested and incarcerated for two probation violations. See *In the Interest of A. G.*, 253 Ga. App. 88, 90-91 (1) (c) (558 SE2d 62) (2001).

(d) *Serious Harm to the Child.* Although the mother and grandmother were affectionate with them, both children exhibited distress before and during contact with the grandmother, the very person the mother was putting forward as a surrogate parent. The foster mother testified that T. W. M. "will never go around" the grandmother and needed hours to recover from the visits. The foster mother also testified that both children clung to her afterward. The juvenile court was authorized to find from this evidence that continued deprivation of the kind already found was likely to cause serious physical, mental, emotional, or moral harm to the children. See, e.g., *In the Interest of A. M. L.*, 242 Ga. App. 121, 124 (1) (d) (527 SE2d 614) (2000) (child's behavioral problems would be exacerbated by further contact with parent).

On the record before us, we conclude that the juvenile court could have found clear and convincing evidence of parental misconduct or inability.

2. *Best Interest of the Child.* When clear and convincing evidence exists of parental misconduct or inability, the juvenile court then considers whether termination of parental rights is in the best interest of the child, in light of the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. OCGA § 15-11-94 (a). The same evidence showing parental misconduct or inability may, and here does, establish that the children's best interests required the termination of the parents' rights. See *In the Interest of J. B. A.*, 230 Ga. App. 181, 185 (2) (495 SE2d 636) (1998). Specifically, there was evidence that the children showed signs of distress after the mother's visits, and that they were thriving in the care of a foster parent who was willing to care for them indefinitely. Thus there was no abuse of discretion when the juvenile court found that the children's best interests would be served by placing them with the Department. See *In the Interest of Z. B.*, 252 Ga. App. 335, 339 (2) (556 SE2d 234) (2001). Since a rational trier of fact could have found clear and convincing evidence of the mother's misconduct or inability, and that termination of parental rights was in the best interests of both children, the juvenile court did not err in terminating the mother's rights as to those children.

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED MAY 5, 2005.

*Lynn Y. Hamilton*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, W. Ashley Hawkins*, for appellee.