627 S.E.2d 402 (2006)
277 Ga. App. 660
In the Interest of J.S.B. et al., children.
No. A06A0522.
Court of Appeals of Georgia.
February 17, 2006.
*403 Melvin R. Horne, Cairo, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Clark & Bellamy, Brian D. Bellamy, Thomasville, for appellee.
BLACKBURN, Presiding Judge.
Following the termination of her parental rights to J.S.B., S.S.H., and S.T.H., the children's natural mother appeals, contending that the evidence was insufficient to support the juvenile court's ruling. For the reasons set forth below, we reverse.
On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the juvenile court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights should have been terminated. In the Interest of H.Y.[1] In addition, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's fact-finding and affirm unless the appellate standard is not met. In the Interest of C.R.G.[2]
Viewed in this light, the evidence shows that the mother's parental rights to seven previous children had been terminated due to her unrehabilitated substance abuse, failure to pay child support, and failure to comply with reunification case plans. She subsequently *404 gave birth to J.S.B. on March 13, 2000 and to twins S.S.H. and S.T.H. on July 9, 2001. When S.T.H. in October 2003 broke her leg, the mother waited two days before seeking medical attention despite the child's limping and obvious pain. The mother then became incarcerated a few days later and left the children with their grandmother (who had previously been disapproved as a placement resource), requiring the local Department of Family and Children Services (DFCS) to take custody of the children for several days until the mother was released. When her residence shortly thereafter burned down and she again became incarcerated, Department of Family and Children Services (DFCS) again took custody of the three children. DFCS eventually filed a deprivation petition, and the mother did not appeal the juvenile court's subsequent finding of deprivation as to all three children. A reunification plan was ordered; however, based on dissatisfaction with the mother's level of compliance with the plan, less than two months later, DFCS petitioned to terminate the mother's parental rights. Following a hearing, the juvenile court granted the petition and terminated her rights, which she now appeals.[3]
1. Two-Step Review. As her sole enumeration of error, the mother contends that the evidence was insufficient to support the juvenile court's order terminating her parental rights. We agree.
The termination of parental rights under OCGA § 15-11-94 involves a two-step analysis. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability, as defined in OCGA § 15-11-94(b). Parental misconduct or inability is found when: "(i) the child is deprived; (ii) lack of proper parental care or control caused the deprivation; (iii) the cause of the deprivation is likely to continue; and (iv) continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child." In the Interest of J.L.K.[4] See OCGA § 15-11-94(b)(4)(A)(i)-(iv). "Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, it must consider whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home." In the Interest of H.Y., supra at 503, 606 S.E.2d 679.
2. Parental Misconduct or Inability. The evidence supported a finding of the mother's parental misconduct or inability.
(a) Deprivation. The juvenile court previously adjudicated the children to be deprived and took judicial notice of its deprivation order in the order terminating the mother's parental rights. As she never appealed the deprivation finding, she is now bound by it. See In the Interest of J.J.[5]
(b) Lack of Proper Parental Care or Control Caused Deprivation. The second criterion for finding parental misconduct or inability requires a showing that a lack of proper parental care or control caused the deprivation. The statute sets forth several conditions that a juvenile court may consider regarding this issue, including:
(i) A medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child;...
(v) Physical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect of the child or of another child by the parent.
OCGA § 15-11-94(b)(4)(B)(i), (v).
(i) Medically Verifiable Mental Deficiency. The mother was diagnosed with antisocial personality disorder, anger control problems, and mild mental retardation. Despite *405 these mental and emotional deficiencies, she disputed her need for psychological therapy and consistently neglected to take the medication prescribed to treat her mental health condition. As a result, the mother had difficulty understanding parenting concepts, as well as communicating with her children. These deficiencies further led to an inability to provide for one of the children's physical needs when she failed to promptly seek medical treatment for S.T.H.'s broken leg. In addition, these deficiencies rendered the mother unable to maintain employment and a stable, safe home environment, and thus unable to provide adequately for the mental and emotional needs of her children.
(ii) Physical, Mental, or Emotional Neglect. As mentioned, the mother failed to seek immediate medical treatment after S.T.H. broke her leg, showing physical neglect. In addition, the mother's incarcerations, which in turn forced DFCS to take custody of the children, demonstrated emotional neglect. Furthermore, the fact that she had previously lost her parental rights to seven other children because of substance abuse, failure to pay child support, and failure to comply with reunification case plans, showed her neglect of other children and therefore was properly considered as evidence supporting the contention that lack of proper care was the cause of her current children's deprivation. See In the Interest of B.B.[6] Thus, the evidence satisfied the second criterion for finding parental misconduct or inability. See In the Interest of C.R.G., supra at 164, 611 S.E.2d 784.
(c) Cause of Deprivation Likely to Continue. Sufficient evidence demonstrated that the cause of the deprivation was likely to continue in this case. It is appropriate for a trial court to consider a parent's past conduct in determining whether the deprivation is likely to continue. In the Interest of C.B.H.[7] As previously stated, the mother was shown to have difficulty developing parenting skills, resulting in her failure to seek immediate medical attention for her child's broken leg. Moreover, she consistently demonstrated a reluctance to improve her parenting skills. Indeed, the in-home counselor who attempted to teach the mother parenting skills testified that she did not believe that the mother would ever be able to develop adequate skills in light of her mental and emotional deficiencies. Additionally, she has failed to participate consistently in treatment for her mental health condition. See In the Interest of H.Y., supra at 504(1)(b), 606 S.E.2d 679. The mother's past felony conviction and incarcerations are also indicative of the likelihood of continued deprivation. See In the Interest of B.C.[8] Thus, the third criterion for finding parental misconduct or inability was satisfied. See In the Interest of C.R.G., supra at 164, 611 S.E.2d 784.
(d) Continued Deprivation Likely to Cause Harm to Children. This brings us to the fourth criterion: whether any evidence shows that the continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children. Although this is a difficult case, we find insufficient evidence to support the juvenile court's conclusion that continued deprivation is likely to cause serious harm to the children. Unlike other cases where we have found evidence of such harm, here no expert witness, such as a psychologist, testified that the mother's antisocial personality disorder or learning disability would be detrimental to the children by causing such things as anger problems or school problems. See In the Interest of S.A.B.[9] Nor did any such witness testify that impermanency and instability were causing specific harms to the children. See In the Interest of M.E.S.[10]
Rather, the only attempt to show that continued deprivation might possibly cause the children harm came from the vague testimony *406 of the DFCS caseworker, who testified that the mother's past history of arrests, mental health issues, and inability to maintain employment created an unsafe and unstable environment. We have previously held, however, that "[t]he mother's inability to care for her children does not necessarily mean that her current relationship with them is detrimental." In the Interest of D.F.[11] See In the Interest of K.J.[12] ("the fact that a mother is unemployed, without prospects for future employment, and without any stable living arrangements is not sufficient to terminate parental rights"). Importantly, the caseworker failed to specify how the children were being harmed. For example, she did not testify that the deprivation had caused the children to be withdrawn or tantrum prone (see In the Interest of N.M.H.[13]); that the children were distressed or afraid of the mother (see In the Interest of C.T.M.[14]); or that the children suffered from nightmares following visits with the mother (see In the Interest of J.W.M.[15]).
Indeed, the lack of testimony as to specific harm has repeatedly caused us to reverse juvenile courts' orders of termination. See In the Interest of A.T.[16] (termination order reversed when only evidence of harm was mother's inability to parent her children); In the Interest of J.T.W.[17] (termination order reversed because "[i]t is not obvious that continued exposure to a mother who has difficulty establishing a stable home environment... will cause serious physical, mental, or moral harm to the child"); In the Interest of J.H.[18] (where the only evidence of harm was the suggestion that the mother's living with a fiancé would harm the child, termination order reversed).
"Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship." In the Interest of J.T.W., supra at 37-38(2)(d), 606 S.E.2d 59. Here, in the absence of sufficient evidence to satisfy the fourth criterion, we are required to reverse the termination order. In the Interest of A.T., supra at 475, 610 S.E.2d 121.
Judgment reversed.
MIKELL and ADAMS, JJ., concur.
NOTES
[1] In the Interest of H.Y., 270 Ga.App. 497, 498, 606 S.E.2d 679 (2004).
[2] In the Interest of C.R.G., 272 Ga.App. 161, 162, 611 S.E.2d 784 (2005).
[3] The rights of the biological father of J.S.B. and of the biological father of S.S.H. and S.T.H. were also terminated and neither has appealed.
[4] In the Interest of J.L.K., 245 Ga.App. 860, 861, 539 S.E.2d 507 (2000).
[5] In the Interest of J.J., 259 Ga.App. 159, 161-162, 575 S.E.2d 921 (2003).
[6] In the Interest of B.B., 268 Ga.App. 858, 860(3)(a), 603 S.E.2d 333 (2004).
[7] In the Interest of C.B.H., 262 Ga.App. 833, 836(1), 586 S.E.2d 678 (2003).
[8] In the Interest of B.C., 235 Ga.App. 152, 155(b), 508 S.E.2d 774 (1998).
[9] In the Interest of S.A.B., 269 Ga.App. 705, 709, 605 S.E.2d 100 (2004).
[10] In the Interest of M.E.S., 263 Ga.App. 132, 139(3), 587 S.E.2d 282 (2003).
[11] In the Interest of D.F., 251 Ga.App. 859, 862, 555 S.E.2d 225 (2001).
[12] In the Interest of K.J., 226 Ga.App. 303, 305(1), 486 S.E.2d 899 (1997).
[13] In the Interest of N.M.H., 252 Ga.App. 353, 357, 556 S.E.2d 454 (2001).
[14] In the Interest of C.T.M., 273 Ga.App. 168, 170(1)(c), 614 S.E.2d 812 (2005).
[15] In the Interest of J.W.M., 273 Ga.App. 20, 23(1)(d), 614 S.E.2d 163 (2005).
[16] In the Interest of A.T., 271 Ga.App. 470, 473, 610 S.E.2d 121 (2005).
[17] In the Interest of J.T.W., 270 Ga.App. 26, 37(2)(d), 606 S.E.2d 59 (2004).
[18] In the Interest of J.H., 267 Ga.App. 541, 545-546, 600 S.E.2d 650 (2004).