A06A2208. IN THE INTEREST OF K. J. M. et al., children.

(637 SE2d 810)

BLACKBURN, Presiding Judge.

The juvenile court of Cobb County terminated the parental rights of the mother of 23-month-old K. J. M. and 12-month-old K. M. M. The mother appeals, challenging the sufficiency of the evidence. For the reasons set forth below, we affirm.

On appeal, we review the evidence in a light most favorable to the juvenile court's judgment and determine only whether "any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated." *In the Interest of J. R.*[1] We defer to the juvenile court's factfinding and thus neither weigh the evidence nor evaluate witness credibility. See id. "Nonetheless, we are mindful that because no judicial determination has more drastic significance than permanently severing a parent-child relationship, such severance must be exercised cautiously and scrutinized deliberately." (Punctuation omitted.) *In the Interest of J. K.*[2]

Viewed in this manner, the record shows that in May 2004, when K. J. M. was four months old, his mother and her boyfriend[3] took him to the hospital after noticing that he was bleeding from his mouth. They were sent home, but because K. J. M. would not stop crying, several days later they took him to a different hospital. This hospital determined that K. J. M. had recent fractures to five separate ribs, old healing fractures to three separate ribs, and fractures to both legs. Neither the mother nor her boyfriend could offer an explanation as to how K. J. M. received his numerous injuries. The hospital reported K. J. M.'s condition to the police, stating that his injuries appeared consistent with nonaccidental injuries, and K. J. M. was taken into

---

[1] *In the Interest of J. R.*, 274 Ga. App. 653 (1) (618 SE2d 688) (2005).

[2] *In the Interest of J. K.*, 278 Ga. App. 564, 565 (629 SE2d 529) (2006).

[3] The mother's boyfriend, Khalil McRae, is the biological father of K. M. M. but is not the biological father of K. J. M. His parental rights as to both children were terminated following the same hearing after which the mother's rights were terminated. His appeal of that decision was previously dismissed by this Court.

protective custody by the Cobb County Department of Family and Children Services (DFCS). Both the mother and her boyfriend were later arrested and indicted on charges of cruelty to a child and aggravated battery.

A few days after K. J. M.'s injuries were diagnosed, DFCS filed a deprivation complaint, and in June 2004, the juvenile court issued an order finding K. J. M. deprived based on his injuries and awarding DFCS temporary legal custody. In July 2004, DFCS prepared a reunification plan, which required the mother and her boyfriend to attend a psychological evaluation; submit to an anger management evaluation and follow subsequent recommendations; successfully complete counseling sessions; take all prescribed medications; attend and complete parenting classes; and use nonharmful methods of discipline for the child. Based on the pending criminal charges, however, neither the mother nor her boyfriend was allowed to have any visitation with K. J. M.

In December 2004, the mother gave birth to her second child, K. M. M., whose biological father was the mother's boyfriend. In light of K. J. M.'s injuries, K. M. M. was taken into protective custody a few days after she was born, and shortly thereafter DFCS filed a deprivation complaint on her behalf. The juvenile court issued an order finding probable cause for deprivation based on her older brother's injuries and awarding DFCS temporary legal custody. DFCS developed a reunification plan for the mother and boyfriend as to K. M. M., which was similar to the plan previously developed for K. J. M. Following a deprivation hearing, the juvenile court issued an order finding K. M. M. to be deprived and granting custody of her to DFCS. In June 2005, DFCS filed a petition for the termination of the mother's and her boyfriend's parental rights to both K. J. M. and K. M. M. A hearing was set but continued after it was determined that the boyfriend was not the biological father of K. J. M. DFCS amended its petition for the termination of parental rights to include K. J. M.'s biological father,[4] and a new hearing date was set for December 2005.

At the hearing on the petition for termination, the mother testified that she and her boyfriend lived together but had no immediate plans to marry. Both she and her boyfriend testified that although no one else was living in their household, neither of them had harmed K. J. M. However, they could not offer an explanation for K. J. M.'s numerous bone fractures other than to speculate that he

---

[4] At the time DFCS amended the petition, K. J. M.'s biological father could not be located. He was served notice of the petition via publication but did not respond and did not attend the juvenile court hearing on the petition. His parental rights to K. J. M. were thus terminated.

may have been hurt a couple of days before his injuries were diagnosed when the boyfriend was bouncing him on his knee and nearly dropped him. The mother testified that she was currently unemployed and had not provided child support payments because she believed the foster parents would not use the money for the care of her children. She further testified that she had complied with most of the reunification plan requirements except for additional anger management counseling and domestic violence counseling, which she allegedly could not afford after DFCS initiated termination proceedings and stopped providing her financial assistance.

At the hearing, the DFCS caseworker and the coordinator of the citizens review panel responsible for the case both testified that neither the mother nor her boyfriend had provided a reasonable explanation for K. J. M.'s injuries. Both also testified that the parents had not paid child support and had not completed the recommended domestic violence counseling. The DFCS caseworker also testified that although the mother acted appropriately during her visits with K. M. M., the young female child would cry inconsolably during those visits because she had bonded so well with her foster parents. After reviewing the evidence, the juvenile court issued an order terminating the mother's and the boyfriend's parental rights as to K. J. M. and K. M. M. From that order, the mother now appeals.

1. *Two-Step Review.* As her sole enumeration of error, the mother of K. J. M. and K. M. M. contends that the evidence was insufficient to support the juvenile court's ruling terminating her parental rights. We disagree.

The termination of parental rights under OCGA § 15-11-94 involves a two-step analysis. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability, as defined in OCGA § 15-11-94 (b). "Parental misconduct or inability is found when: (i) the child is deprived; (ii) lack of proper parental care or control caused the deprivation; (iii) the cause of the deprivation is likely to continue; and (iv) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child." (Punctuation omitted.) *In the Interest of J. S. B.*[5] "Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, it must consider whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home." *In the Interest of H. Y.*[6]

---

[5] *In the Interest of J. S. B.*, 277 Ga. App. 660, 661 (1) (627 SE2d 402) (2006).

[6] *In the Interest of H. Y.*, 270 Ga. App. 497, 503 (606 SE2d 679) (2004).

2. *Parental Misconduct or Inability.* The evidence supported a finding of the mother's parental misconduct or inability.

(a) *Deprivation.* There is no question in this case that K. J. M. and K. M. M. would be deprived if returned to their mother's custody given the mother's lack of employment, her inability to financially support her children, her failure to receive further anger management counseling, and her failure to complete domestic violence counseling. See *In the Interest of J. K.*, supra, 278 Ga. App. at 567 (1). Furthermore, K. J. M.'s "unexplained injuries may constitute evidence of deprivation." *In the Interest of T. J.*[7]

(b) *Lack of Proper Parental Care or Control Caused the Deprivation.* In determining whether the children were without proper parental care or control, the juvenile court could consider "evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature." OCGA § 15-11-94 (b) (4) (B) (iv). See also *In the Interest of V. M. T.*[8] In addition, the juvenile court could also consider whether the parent has failed "[t]o provide for the care and support of the child as required by law or judicial decree." OCGA § 15-11-94 (b) (4) (C) (ii).

Here, the extent of K. J. M.'s injuries provides evidence that he was subjected to serious physical abuse while in his mother's care. "Even if the mother did not cause the injuries, the juvenile court was authorized to conclude that the injuries were attributable to her inability to protect her child, which also constitutes lack of proper parental care and control." *In the Interest of V. M. T.*, supra, 243 Ga. App. at 736 (3). Additionally, the juvenile court was authorized to consider the mother's conduct toward K. J. M. and his injuries as evidence that K. M. M. was also deprived due to lack of proper parental care or control. See *In the Interest of S. R. B.*[9] Furthermore, the mother's admission that she had failed to maintain stable employment, coupled with the fact that she failed to provide financial support for either child, provided additional evidence that the children's deprivation was caused by lack of proper parental care or control. See *In the Interest of C. M.*[10]

(c) *The Cause of the Deprivation is Likely to Continue.* The evidence further supported the juvenile court's finding that the cause of the deprivation is likely to continue. It is appropriate for a juvenile court to consider a parent's past conduct in determining whether the

---

[7] *In the Interest of T. J.*, 273 Ga. App. 547, 549 (615 SE2d 613) (2005).

[8] *In the Interest of V. M. T.*, 243 Ga. App. 732, 736 (3) (534 SE2d 452) (2000).

[9] *In the Interest of S. R. B.*, 270 Ga. App. 466, 470 (4) (606 SE2d 655) (2004).

[10] *In the Interest of C. M.*, 275 Ga. App. 719, 722 (3) (621 SE2d 815) (2005).

deprivation is likely to continue. *In the Interest of C. B. H.*[11] Here, K. J. M. suffered multiple bone fractures in at least two separate incidents given the fact that the hospital determined that he had old healing fractures in addition to the more recent ones. His mother, however, could not provide a plausible explanation for his injuries. She has "never identified the source of the problem; therefore, the abuse is unremedied, and the home situation remains the same as when [K. J. M.] suffered the broken bones." (Punctuation omitted.) *In the Interest of J. D. A.*[12] The mother has also failed to find stable employment and has not provided financial support for her two children. See *In the Interest of B. S.*[13] Furthermore, the mother failed to complete either the domestic violence counseling or the additional anger management counseling recommended as part of the reunification plan, and thus has failed to take measures to remedy the problems which more than likely contributed to K. J. M.'s injuries. See *In the Interest of K. N.*[14] (failure to comply with mental health counseling is a factor in determining whether deprivation is likely to continue); *In the Interest of J. D. A.*, supra, 267 Ga. App. at 106 (1). Accordingly, there was sufficient evidence to show that the cause of the deprivation is likely to continue if the children were to be returned to the mother's custody.

(d) *Continued Deprivation Likely to Cause Harm to Children.* Based on the evidence that K. J. M. has suffered ten separate bone fractures, and that his mother has failed to offer a reasonable explanation for those injuries, the juvenile court was authorized to find that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children. See *In the Interest of J. D. A.*, supra, 267 Ga. App. at 106 (1). Accordingly, the juvenile court did not err in finding the existence of parental misconduct or inability.

3. *Termination of Parental Rights is in the Best Interests of the Children.* "The determination as to the children's best interests must be made considering the [children's] physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home." (Punctuation omitted.) *In the Interest of C. A.*[15] A juvenile court has broad discretion in determining how the interests of the children are best served. *In the Interest of M. C.*[16] "[T]hose same factors which show the existence of parental misconduct or inability

---

[11] *In the Interest of C. B. H.*, 262 Ga. App. 833, 836 (1) (586 SE2d 678) (2003).

[12] *In the Interest of J. D. A.*, 267 Ga. App. 103, 106 (1) (598 SE2d 842) (2004).

[13] *In the Interest of B. S.*, 274 Ga. App. 647, 651 (2) (618 SE2d 695) (2005).

[14] *In the Interest of K. N.*, 272 Ga. App. 45, 53 (611 SE2d 713) (2005).

[15] *In the Interest of C. A.*, 278 Ga. App. 93, 96 (2) (628 SE2d 151) (2006).

[16] *In the Interest of M. C.*, 243 Ga. App. 707, 712 (2) (534 SE2d 442) (2000).

can also support a finding that the termination of parental rights of the defaulting parent would be in the [children's] best interest[s]." (Punctuation omitted.) *In the Interest of C. A.*, supra, 278 Ga. App. at 96 (2).

Here, the uncontroverted evidence showed that K. J. M. suffered multiple bone fractures by the age of four months, and that his mother could not reasonably explain these injuries. In addition, K. J. M. and K. M. M. have been placed in foster care and have bonded with their foster parents. Indeed, the evidence showed that K. M. M. cries uncontrollably when placed in her mother's care during scheduled visitation but does not do so when with others. Furthermore, the mother was unemployed at the time of the hearing and had never paid any of the required child support. In light of these circumstances, the juvenile court was authorized to find that termination of the mother's parental rights was in the best interests of the children. See *In the Interest of C. A.*, supra, 278 Ga. App. at 97 (2); *In the Interest of S. R. B.*, supra, 270 Ga. App. at 470 (4).

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED OCTOBER 24, 2006.

*Stacy S. Garguilo, David J. Koontz,* for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Sanders B. Deen,* for appellee.