678 S.E.2d 141 (2009)
In the Interest of A.B. et al., children.
No. A09A0021.
Court of Appeals of Georgia.
May 4, 2009.
*142 Jason K. Hoffman, Tifton, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Kathryn A. Fox, Asst. Atty. Gen., Render M. Heard Jr., Tifton, for appellees.
ADAMS, Judge.
Following the termination of her parental rights, the mother of A.B. and C.B., III, appeals, claiming that the evidence was insufficient to support the termination and that the juvenile court's order failed to include required findings of fact. For the reasons set forth below, we affirm.
On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.
(Citation omitted.) In the Interest of A.B., 274 Ga.App. 230, 617 S.E.2d 189 (2005).
So viewed, the evidence shows that on September 29, 2000, the juvenile court entered orders[1] placing the mother's five children in shelter care following allegations that three-year-old J.B. had suffered burns of a suspicious nature and that six-month-old C.B. was the victim of medical neglect. On December *143 13, 2000, the juvenile court, relying upon the express statements of the mother and the natural fathers that it was in the children's best interests, placed all of the children in the temporary custody of the Georgia Department of Human Resources by and through the Tift County Department of Family and Children Services (the "Department").
On October 1, 2001, the juvenile court extended custody of the children with the Department. The court found that although the mother had accomplished most of her case plan goals, she needed additional anger management counseling, noting that she had demonstrated problems controlling her anger in the presence of the children, Department representatives, and the court. Further, the court found that "[t]he natural mother has not given a plausible explanation for the burns on [J.B.], and said child has identified the natural mother as the perpetrator of the abuse."
On October 10, 2002, the court approved a permanency plan for J.B. through placement with his paternal grandmother. In its findings of fact, the court noted that there was severe scarring on the child's legs, that the child identified the mother as the perpetrator of the abuse, and that the child was "very anxious of any contact or visits with the natural mother." Further, the juvenile court found that "[t]he natural mother did not obtain medical care for [J.B.'s] injuries as she stated she was afraid of the consequences."
On August 12, 2003, the juvenile court approved a nonreunification plan as to the mother's four other children, A.B., A.J., C.B., and K.D., finding among other things that the mother failed to complete anger management counseling and to maintain contact with the Department. On August 25, 2004, the juvenile court again extended temporary custody of the four children with the Department, finding that no explanation for J.B.'s serious injury had been given, and that the court remained concerned with the mother's ability to control her anger, as "[n]umerous witnesses testified as to their observations and involvement to such outbursts." None of the foregoing orders was appealed.
On February 9, 2006, the Department petitioned to terminate the mother's parental rights to A.B. and C.B.[2] Testimony at the subsequent hearing included that of Dr. Phyllis Cazares, who had conducted a psychological examination of A.B., A.J., and of the mother. Dr. Cazares testified that A.B.'s drawings were typical of a child who had a strong need to find nurturing. She opined that it is important for a child of her age to feel a "stability of a home, of a family to feel safe, to feel nurtured, to feel secure." As to A.J., Dr. Cazares opined that, among other things, A.J. had been the victim of physical abuse. With respect to the mother, Dr. Cazares testified that if her children were returned to her custody, careful monitoring would be appropriate. Dr. Cazares also testified that the mother showed "a relative lack of concern" for the burn injuries to her son and that, in light of the removal of the children from her custody, "she was not taking the seriousness of the situation into account."
A.J. also testified at the hearing. According to A.J., the mother "used to beat us with... all kind of ... objects." She testified that the mother had beaten her with an extension cord and a shoe. The mother had also whipped A.J. with a switch to the extent that it left marks on A.J.'s arms and legs.
Testimony of the mother and representatives of the Department showed that the mother continued to have anger management problems. The mother agreed that although she had completed anger management classes she had several outbursts in the Department offices. A Department care supervisor testified that the mother had exhibited anger problems following her completion of anger management classes, including that on several occasions "she'd get very mad and curse and she'd hang up the phone on me." The Department case manager testified that the mother had screamed and yelled at her on "a couple of occasions." On September 25, 2007, the juvenile court filed its order *144 terminating the parental rights of the mother to A.B. and C.B.[3]
1. In order to terminate a parent's rights to his or her child, the court must find (i) clear and convincing evidence of parental misconduct or inability, and (ii) that the termination of parental rights is in the child's best interest, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home. See In the Interest of A.C., 272 Ga.App. 165, 166, 611 S.E.2d 766 (2005). The court determines parental misconduct or inability by finding (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. See id.; OCGA § 15-11-94(b)(4)(A).
(a) The mother does not challenge the sufficiency of the evidence to establish that A.B. and C.B. were deprived or that the lack of proper parental care or control was the cause of their deprivation, but she claims that there was a lack of clear and convincing evidence to authorize the juvenile court's finding that the cause of the children's deprivation was likely to continue. We disagree.
"[T]he juvenile court may consider the parent's past conduct in determining whether deprivation is likely to continue." (Citation and punctuation omitted.) In the Interest of M.J.G., 288 Ga.App. 754, 755, 655 S.E.2d 333 (2007). Here, one of the mother's children, J.B., suffered a serious injury while in the mother's care. The juvenile court subsequently extended custody of all of the mother's children with the Department over a period of years, finding in a series of orders that the mother either failed to provide an explanation for J.B.'s injury or that her explanation was implausible.[4] See In the Interest of G.B., 263 Ga.App. 577, 582(1), 588 S.E.2d 779 (2003) (in determining whether parent is presently unfit to care for a child, the juvenile court can consider the parent's care of his or her other children). The mother did not provide any new explanation for the injuries at the termination hearing, and the juvenile court found there was a "high probability" that she inflicted the injuries.[5] Accordingly, "the abuse is unremedied, and the home situation remains the same as when the [child] suffered the [burns]." In the Interest of J.V., 241 Ga.App. 621, 628(1), 526 S.E.2d 386 (1999).
The juvenile court, in its previous orders, had also identified the mother's continuing problems with anger control as contributing to the children's deprivation. Although the mother subsequently participated in anger counseling, the evidence of her behavior presented at the termination showed that the mother continued to demonstrate outbursts of anger, as noted by the juvenile court. See, e.g., In the Interest of K.J.M., 282 Ga. App. 72, 76(2)(e), 637 S.E.2d 810 (2006) (mother failed to take action to remedy anger problems which more than likely contributed to the child's injuries). The juvenile court also cited A.J.'s testimony that the mother had beaten her with an electrical cord, which reflected either on the seriousness of the mother's anger control problem or her lack of judgment. The mother argues that A.J.'s testimony was unbelievable, noting that the guardian ad litem, who did not recommend termination, concluded that A. J. "appeared to have her own agenda." However, this court does not determine the credibility of witnesses in determining whether the evidence *145 was sufficient to warrant termination. See In the Interest of T.W.O., 283 Ga.App. 771, 643 S.E.2d 255 (2007). Rather, any rational trier of fact could find by clear and convincing evidence that the cause of A.B.'s and C.B.'s deprivation was likely to continue. See In the Interest of K.J.M., 282 Ga.App. at 76(2)(c), 637 S.E.2d 810.
(b) The mother also contends that the evidence was insufficient to establish that the children's continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm. We disagree.
The only logical inquiry as to [this factor] is whether the child would be harmed if returned to the parent's care and control, associated environment, and state of deprivation. In other words, although the child was found deprived on the hearing date, the question for termination is if the child were returned to the parent's care and associated environment, would the child be harmed thereby?
(Emphasis in original.) In the Interest of J.K., 278 Ga.App. 564, 567(1), 629 S.E.2d 529 (2006). The juvenile court expressly concluded that there was a high likelihood that A.B. and C.W. would suffer serious harm if returned to the mother, and made specific findings that, among other things, it was highly probable that the mother inflicted J.B.'s injuries, that the mother had a history of anger management problems, and that counseling had failed to reduce her outbursts of anger. These findings of facts were sufficient to support the juvenile court's conclusion that the continued deprivation of the children would cause them, or was likely to cause them, serious physical, mental, emotional, or moral harm. See In the Interest of T.H., 290 Ga.App. 421, 426(1)(d), 659 S.E.2d 813 (2008) ("[t]he juvenile court is not obligated to return a child to a parent and wait for the child to actually be harmed before terminating the parent's rights to the child") (citation and punctuation omitted); In the Interest of J.K., 278 Ga.App. at 568(2), 629 S.E.2d 529; In the Interest of N.L., 260 Ga.App. 830, 835, 581 S.E.2d 643 (2003) (considering that children had suffered injuries while in the mother's care in assessing whether continued deprivation would likely cause harm).
2. The mother also contends that the juvenile court erred in failing to set forth findings of fact to support its conclusion that continued deprivation will likely cause serious physical, mental, emotional, or moral harm to the children. See In the Interest of K.J., 226 Ga.App. 303, 307(2)(b), 486 S.E.2d 899 (1997) (an order terminating parental rights must contain explicit findings of fact). The trial court, however, did make such findings of fact, as discussed in Division 1(b), supra.
Judgment affirmed.
BLACKBURN, P.J., and DOYLE, J., concur.
NOTES
[1] At the termination hearing, the juvenile court took judicial notice of all previously filed orders in the case.
[2] On the same date, the Department petitioned that temporary custody of K.D. and A.J. be transferred to their respective paternal grandparents, with whom they were currently placed.
[3] The appeal was not docketed in this court until August 19, 2008.
[4] The mother's explanation for the child's burns was that one of his siblings had placed him in a tub of hot water.
[5] The mother points out that the juvenile court cites the "medical" evidence as showing an inconsistency between J.B.'s injuries and her explanation but that there was no "medical" evidence included in the record. Pretermitting whether the trial court mischaracterized the nature of the evidence, the juvenile court's previous findings of fact as to this issue, which were binding on the mother, included that J.B.'s injuries remained unexplained and that the child had named his mother as the perpetrator of the abuse. In the Interest of M.H.W., 277 Ga.App. 318, 319(1)(a), 626 S.E.2d 515 (2006). The juvenile court's finding as to the likelihood that the mother inflicted the injuries is supported by the evidence.