655 S.E.2d 333 (2007)
In the Interest of M.J.G., a child.
No. A07A2151.
Court of Appeals of Georgia.
December 4, 2007.
*334 Debra Walls Hale, Lawrenceville, for Appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Elizabeth M. Williamson, Asst. Atty. Gen., Victoria Wallace Wuesthoff, Michelle Brodie Vereen, for Appellee.
MILLER, Judge.
A juvenile court terminated the parental rights of the biological mother and father of M.J.G., then a nine-year-old child. Only the mother appeals the juvenile court's order, contending that the State did not show by clear and convincing evidence that the child's deprivation was likely to continue or that it was likely to cause serious physical, mental, emotional, and moral harm to the child. Discerning no error, we affirm.
On appeal, we review the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the biological parents had lost their parental rights. In the Interest of C.R.G., 272 Ga.App. 161, 161-162, 611 S.E.2d 784 (2005). In so doing, "we neither weigh evidence nor determine the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met." (Citation and punctuation omitted.) In the Interest of M.J.L., 284 Ga.App. 176, 643 S.E.2d 395 (2007).
So viewed, the evidence shows that on March 5, 2005, the juvenile court entered an emergency hearing order finding probable cause to that believe the child was deprived for lack of a legal guardian to provide him proper parental care and control and placed the child in the custody of the Gwinnett County Department of Family and Children Services (the "Department"). The child had been taken into emergency shelter care on February 25, 2005 because Casey Gray, with whom the child had been living at the mother's behest for three and a half years upon the belief that he was the child's biological father, gave him up after DNA testing revealed the contrary.
On July 15, 2005, the juvenile court again adjudicated the child to be deprived for lack of proper parental care or control and issued a temporary placement order allowing the child to remain in the custody of the Department. Among other things, the juvenile court found as fact that the mother was incarcerated in another state,[1] had not communicated with the child in three years, and had abandoned the child; that Gray had neglected the child's physical, mental and emotional needs while in his care; and that Gray's actions in "disowning the child he had previously claimed as his own were hurtful and damaging to the child."
The foregoing orders are unappealed in the record.
Based on its determination that the mother was incarcerated and had abandoned the child, the juvenile court relieved the Department of any requirement to undertake reunification efforts on behalf of the mother by an order entered September 8, 2005. The Department filed its termination petition on November 9, 2005, and, on November 28, 2005 following a hearing, the juvenile court granted the same, terminating the parental rights of the mother and "any and all biological and/or legal fathers." It is from the juvenile court's termination order that the mother appeals.
A juvenile court's termination of parental rights is a two-step process: The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or *335 control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.
(Citation omitted.) In the Interest of M.J.L., supra, 284 Ga.App. at 177, 643 S.E.2d 395.
The mother challenges the termination of her parental rights, arguing only a lack of clear and convincing evidence as to two of the factors necessary to a finding of parental misconduct or inability: (i) that the child's deprivation is likely to continue, and (ii) that a continued deprivation would likely cause serious harm to the child. We disagree.
It is well settled that the juvenile court may consider the parent's past conduct in determining "whether deprivation is likely to continue." (Citation omitted.) In the Interest of T.B., 267 Ga.App. 484, 486(1), 600 S.E.2d 432 (2004). In this regard, the evidence presented at the termination hearing showed that prior to the child's placement in foster care, the mother had been in an abusive relationship and had committed five violent felonies while the child lived with her. The child testified that he had little memory of his mother and would feel only "kind of" safe with her, but "not as good as [he would] with [his foster parent]." Other evidence showed that since her release from prison, the mother had not visited her six-year-old daughter, M.J.G.'s half-sister, who lived with the girl's paternal grandparents, even though the mother had legal custody of her; was unemployed, having recently been fired; was living with her fiancé whom she met through another inmate while in prison; and had no means of supporting the child. Further, the clinical psychologist who evaluated the child testified that M.J.G. had demonstrated behaviors consistent with children who had experienced domestic violence and neglect; that he was doing "very well" in foster care; that he could not tolerate being abandoned again; that adoption and a nurturing placement was the best way to enable the him to reach his "full potential," and that his current foster parent had been identified as an adoptive resource.
The mother argues that she could be a good parent, indicating that she never intended to abandon the child and that she made good use of her time in confinement by taking three courses in parenting. "The decision as to a child's future[, however,] must rest on more than positive promises which are contrary to negative past fact[,]" (In the Interest of J.L.Y., 184 Ga.App. 254, 257(2), 361 S.E.2d 246 (1987)), and "[t]he past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue." (Citations and punctuation omitted.) In the Interest of D.I.W., 215 Ga.App. 644, 646(1), 451 S.E.2d 804 (1994). Moreover, "in considering past deprivations compared to present achievements, juvenile courts are entitled to assign much less weight to such assertions of sudden parental fitness when compared to the other evidence." In the Interest of E.J., 284 Ga.App. 814, 817, 644 S.E.2d 906 (2007).
Given these circumstances, there was sufficient evidence to authorize the juvenile court's finding of clear and convincing evidence that the child's deprivation for lack of proper parental care or control is likely to continue and that continued deprivation would likely cause the child serious harm. See In the Interest of K.A.S., 279 Ga.App. 643, 651(1)(d), 632 S.E.2d 433 (2006) (holding that "the same facts that support a juvenile court's conclusion that a child is deprived and that the deprivation is likely to continue if placed with the parent also support a conclusion that continued deprivation would likely cause the child serious harm")(footnote omitted).
Given that the mother does not otherwise challenge the trial court's findings terminating her parental rights as error, we affirm.
Judgment affirmed.
BARNES, C.J., and SMITH, P.J., concur.
NOTES
[1] The mother admitted committing "two or three burglaries" in DeKalb County in late 2001, and, in early 2002, a robbery and an assault, reduced to reckless endangerment with a deadly weapon, in Memphis, Tennessee, for which she was incarcerated from November 2002 to April 2006.