659 S.E.2d 813 (2008)
In the Interest of T.H., et al., children.
No. A07A2215.
Court of Appeals of Georgia.
March 21, 2008.
*814 Teresa G. Bowen, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, John D. Staggs Jr., Huey W. Spearman, Waycross, for appellee.
ADAMS, Judge.
The mother of T.H., T.H. and M.H. appeals from the order of the juvenile court terminating her parental rights, challenging the sufficiency of the evidence and contending that termination of her parental rights is not in the best interests of the children.
On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines *815 whether any rational trier of fact could have found by clear and convincing evidence that the natural parents' rights to custody have been lost. In the Interest of S.H., 251 Ga.App. 555(1), 553 S.E.2d 849 (2001). "This court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met." . . . In the Interest of C.R.G., 272 Ga.App. 161, 161-162, 611 S.E.2d 784 (2005).
In the Interest of M.C., 287 Ga.App. 766(1), 653 S.E.2d 120 (2007).
Viewed in this light, the record and transcript show the following: T.H., the oldest child, came into the custody of the Department of Family and Children Services (the Department) after he was severely injured by Herbert Kay, with whom the mother had a relationship. His injuries included a fractured skull, fractured right eye and lacerated liver. The mother initially told authorities she did not know what happened to the child and then later said he was injured when he fell off a bed. However, the only bed in the house was a mattress on the floor.
Custody was returned to the mother in September 2005 after she complied with her case plan with the Department providing intensive services and supervision for a period of six months. However, in January 2006, both T.H. and his brother were again removed from the mother's custody after she violated the terms of her case plan by letting Kay see the children. The record shows this incident occurred after the mother had been held by Kay against her will the previous night. The mother explained she let Kay see the children then because she thought he would be incarcerated after she reported the incident. The two children were adjudicated deprived following this incident. In December 2006, the mother gave birth to a third child, M.H., who was removed from her custody upon release from the hospital. A petition to terminate the parental rights of the mother to her two older children was also filed about this time. M.H. was also adjudicated deprived and a termination of parental rights was later filed on her behalf.
Testimony was introduced at the termination hearing about the help the mother had been given during the months she had the two older children. According to the Department's caseworker, the mother had been given all the furniture in the house where they were living, and was being offered numerous support services in the home. The caseworker testified that even before the mother violated the case plan by letting Kay see the children, she had started failing to maintain contact with the Department and other support agencies and her whereabouts were at times unknown. Also, liquor bottles were observed "laying all in the house with various men in and out of the house with her and the children there."
The caseworker also testified that the mother had not developed adequate parenting skills during the time she had the children despite being given the assistance and opportunity to do so and that she did not demonstrate she could adequately care for the children during the time they were in her custody. The caseworker testified that the mother had asked for three more months at the time of the previous hearing to comply with the case plan but had not obtained her own housing, employment or maintained child support payments since that time. The mother was also living with a relative whose home had not been approved for the children.
The caseworker testified there was "absolutely nothing else" in the way of services that the Department could provide to the mother that had not already been provided to her. The caseworker also testified that the children visit with the mother but they do not acknowledge her as such. She testified there was no parental bond and that the mother does not exhibit appropriate parenting skills, even for short visits. She also testified that the children needed the permanency that had been lacking in their lives.
A witness from the Child Support Enforcement Unit also testified at the termination hearing that the mother was $3,603.80 in arrears in her child support payments, and the mother would "most probably" be incarcerated "soon" because of her failure to pay. The witness also testified that the mother had been given "leniency" after the birth of *816 her third child and that she had been given time to recover and look for a job.
The mother testified that she was still living with her aunt and recognized that her aunt's home had not been approved as a placement for her children. She testified she was just waiting for the final paperwork to be completed on housing she had obtained. She acknowledged that she was in arrears in her child support payments and testified that she had been looking for a job since the last hearing. The mother testified it had been about a year since she was last employed and that she was terminated from that job for selling alcohol on Sunday. She testified that she was about three weeks away from obtaining her GED and that when she completed that she was going to take an eight-week course to obtain her CNA degree. She testified that she visits her two older children approximately every other week and that they call her mama. She said she had visited her youngest child about three times in approximately three months, including the last time she was in court. She also testified that she was asking to continue the case to give her more time to get a job and to be able to take care of her children without assistance.
Tiffany Henderson from Advantage Counseling testified that she has been involved with the family since 2005 and that she had performed a Comprehensive Child and Family Assessment on each of the children. She stated that although her initial recommendation was for reunification, as time has passed and no progress has been made, her recommendation changed to nonreunification. She testified that the mother has been making representations that she would be completing her GED and obtaining adequate employment and housing since her involvement started in 2005. She opined that the mother had "regressed" since 2005 when she got her two oldest children back. In her opinion, the mother could not exercise appropriate parental judgment to protect the children nor adequately provide for them.
The foster mother of the two older children testified that she had "seen some maturing going on, which there's still maturing to be done." She testified the children call both her and the mother "mom," and they are close to her when she visits. She testified the mother calls almost every day to check on the children and that the older child has a strong attachment to his mother and to her. She testified she had witnessed the mother's efforts to get a job and had given her rides to look for a job and a place to live. She also testified that she did not think the mother's parental rights should be terminated "if she can get her act together and do what she needs to do."
Georgia law provides for a two-step process that must be followed in determining whether to terminate parental rights. OCGA § 15-11-94(a) requires that the trial court "first determine whether there is present clear and convincing evidence of parental misconduct or inability." Parental misconduct or inability is determined under the four criteria set forth in OCGA § 15-11-94(b)(4)(A)(i)-(iv). Those four factors are: (1) the child is deprived; (2) the lack of proper parental care and control by the parent whose rights are being terminated is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four facts are shown to exist by clear and convincing evidence, the court must also determine whether termination of parental rights is in the best interest of the child, "after considering the physical, mental, emotional, and moral condition and needs of the child, . . . including the need for a secure and stable home. OCGA § 15-11-94(a)." (Punctuation omitted.) In the Interest of C.M., 275 Ga.App. 719, 720, 621 S.E.2d 815 (2005).
1. Parental Misconduct or Inability. We find that there was clear and convincing evidence to support a finding by the juvenile court of parental misconduct or inability based upon the statutory factors.
(a) Deprivation. Because the mother did not appeal the juvenile court's orders finding that the children were deprived, she is bound by that determination. In the Interest of B.L.S., 239 Ga.App. 771, 774, 521 S.E.2d 906 (1999).
*817 (b) Lack of Proper Parental Care or Control as a Cause of Deprivation. The mother argues that the cause of the initial deprivation was Herbert Kay and that she was unaware that he had injured T.H. But this argument ignores that T.H. was returned to her care thereafter and ignores that the mother demonstrated her inability to care for her children during that time, which resulted in the children being again removed from her custody. Moreover, the mother's failure to appeal the deprivation order renders the juvenile court's determination on this second factor binding as well. In the Interest of A.B., 283 Ga.App. 131, 136(1)(a), 640 S.E.2d 702 (2006).
(c) Deprivation Likely to Continue. Considering the sufficiency of the evidence on this issue, we observe that
[a]lthough it is well settled that a juvenile court may consider the past conduct of the parent in determining whether the conditions of deprivation are likely to continue, In the Interest of L.G., 273 Ga.App. 468, 474(2)(c), 615 S.E.2d 551 (2005), it is equally true that "evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of present unfitness is required." (Emphasis supplied.) In the Interest of A.M., 275 Ga. App. 630, 633, 621 S.E.2d 567 (2005). However, in considering past deprivations compared to present achievements, juvenile courts are entitled to assign "much less weight to such `assertions of sudden parental fitness' when compared to the other evidence." In the Interest of L.G., 273 Ga.App. at 474, 615 S.E.2d 551. And "what weight to give recent improvements is a question for the trier of fact. In considering a parent's claims of recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation." (Punctuation and footnotes omitted.) In the Interest of A.T.H., 248 Ga.App. 570, 573(1), 547 S.E.2d 299 (2001).
In the Interest of D.D.B., 282 Ga.App. 416, 418-419(1), 638 S.E.2d 843 (2006).
The record shows that the two older children had not been in their mother's custody for much of their lives and that the youngest child had been in foster care since birth. Moreover, at the time of the termination hearing, the mother was seriously in arrears in her child support and had not worked in approximately a year. "Georgia law requires a parent to financially support his or her child while the child is in foster care, even in the absence of a court order and even if unable to earn income. [Cits.]" In the Interest of A.R.A.S., 278 Ga.App. 608, 613(2)(c), 629 S.E.2d 822 (2006). Likewise, the mother's continued failure to comply with her reunification plan supported the juvenile court's finding that deprivation was likely to continue. In the Interest of F.C., 248 Ga. App. 675, 678(1), 549 S.E.2d 125 (2001).
(d) Continued Deprivation Likely to Cause Serious Harm. "[I]t is not automatically true that a finding that deprivation is likely to continue will support a finding that continued deprivation will harm the child." In the Interest of J.T.W., 270 Ga.App. 26, 37(2)(d), 606 S.E.2d 59 (2004). In this case, at the time of the hearing, the mother acknowledged that she had not yet achieved housing, employment or the ability to support her children and was again requesting more time to be able to provide for the children. Moreover, evidence was presented that the mother had "regressed" since she last had custody of her children and that she lacked both the financial means and the parenting skills to adequately care for them. "[T]he juvenile court is not obligated to return a child to a parent and wait for the child to actually be harmed before terminating the parent's rights to the child." (Footnote omitted.) In the Interest of B.S., 274 Ga.App. 647, 651(3), 618 S.E.2d 695 (2005). The caseworker testified about the need for permanence for the children and the lack of permanence the children currently had in their lives, and the trial court was authorized to consider the adverse effects on the children in making this determination. "[I]t is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Citation omitted.) In the Interest of A.B., 274 Ga.App. 230, 232, 617 S.E.2d 189 (2005).
*818 2. We also find that the evidence here and discussed above supports the determination that termination of the mother's parental rights was in the children's best interests. "The same factors that show the existence of parental misconduct or inability may also support the juvenile court's finding that terminating the parent's rights would be in the child's best interest." (Punctuation and footnote omitted.) In the Interest of R.S., 270 Ga.App. 810, 812, 608 S.E.2d 286 (2004). Having reviewed the record and transcript here, we conclude that there was clear and convincing evidence to support the juvenile court's finding that termination of the mother's parental rights was in the best interests of the children considering their physical, mental, emotional and moral condition and their "need for a secure and stable home." OCGA § 15-11-94(a); In the Interest of C.M., 275 Ga.App. at 722, 621 S.E.2d 815.
"The termination of parental rights is a severe measure. However, a termination hearing seeks above all else the welfare of the child. In determining how the interest of the child is best served, the juvenile court is vested with a broad discretion which will not be controlled in the absence of manifest abuse." (Citations and punctuation omitted.) In the Interest of M.L.P., 236 Ga. App. 504, 510(1)(d), 512 S.E.2d 652 (1999). We find no such abuse of discretion in this case. After careful review, we find that the juvenile court did not abuse its discretion in terminating the mother's parental rights.
Judgment affirmed.
ANDREWS, P.J., and ELLINGTON, J., concur.