A09A0484. IN THE INTEREST OF P. D. W. et al., children.
(674 SE2d 338)

BLACKBURN, Presiding Judge.

The mother of W. C. W., P. D. W., and P. N. W. appeals from an order terminating her parental rights as to all three children. She challenges the sufficiency of the evidence and argues that the juvenile court erred in failing to appoint her counsel or to allow her to obtain counsel. We hold that the evidence supported the termination order. However, because the juvenile court erred in failing to conduct the proper inquiries and to make the proper findings regarding the mother's lack of counsel, we must vacate the judgment and remand the case for further proceedings.

Viewed in favor of the juvenile court's judgment, *In the Interest of A. G.*,[1] the evidence shows that in May 2005, Troup County Department of Family and Children Services (the "Department") filed a deprivation petition concerning the mother's three children (W. C. W., P. D. W., and P. N. W., who were then seven, six, and four years old, respectively) based on the mother's chronic illegal drug abuse and unemployment that had resulted in the children having inadequate housing, food, and care. Under the deprivation order, the children were left in the care of the mother, who at the time was represented by appointed counsel; however, continued custody was conditioned on the mother complying with a case plan that required her to undergo a certified drug treatment program, to obtain suitable housing for the children, to obtain stable employment providing an adequate income, and to remain drug and alcohol-free. She failed to comply with the plan, relapsing into drug and alcohol abuse and failing to obtain either employment or suitable housing. In October 2005, the Department filed a petition for custody of the children, which the court granted based on another finding of deprivation. The mother again agreed to the case plan, this time specifically acknowledging that she bore the legal obligation of providing the Department with child support while the children remained in the Department's custody.

Over the next year, the mother relapsed into drug use and did not begin a drug-treatment program until November 2006, but even then she attended only six of thirty-four scheduled sessions and quit the program entirely in January 2007, when she had yet another relapse into drug use. Knowing this treatment was required to get her children back, she promised in October 2007 to reenter the drug treatment program, but she failed to do so. From October 2005 until late January 2008, she lived at a home which even she conceded was

---

[1] *In the Interest of A. G.*, 293 Ga. App. 383 (667 SE2d 176) (2008).

unsuitable for children, given the prevalence of drug use by other residents. During this same time period, her sporadic employment did not provide, according to her own admission, an income adequate to support the children. Because of these circumstances, she repeatedly stipulated in unappealed orders — in which she was sometimes represented by the same appointed counsel — that the children were deprived and should remain in the Department's custody, with the most recent order occurring in September 2007. She never forwarded any funds to the Department for the children's support.

Accordingly, in mid-January 2008, the Department petitioned to terminate the mother's parental rights. At the hearing in late March 2008, the mother put on evidence that for the two months since the filing of the petition, she had been living with a new boyfriend, who was her "magic formula" and whose house and income could provide the necessary housing and support for the children. She conceded, however, that the boyfriend was still married to someone else, that her relationship with him might not be permanent, and that the children had met him only once (the weekend before the hearing). She also showed that she had been drug-free for eight months. The court terminated the mother's rights in a detailed order. She appeals with leave of this Court.

1. We first address the challenge to the sufficiency of the evidence. The standard of review is clear.

> In reviewing a juvenile court's decision to terminate parental rights, we view the evidence in the light most favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody should be terminated. In so doing, we do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.

(Punctuation omitted.) *A. G.*, supra, 293 Ga. App. at 383.

In a termination of parental rights case, OCGA § 15-11-94 (a) requires the juvenile court to consider whether there is clear and convincing evidence of parental misconduct or inability as provided in subsection (b) of that Code section. If such is shown, then the court considers whether termination of parental rights is in the best interest of the child.

Subsection (b) of the statute then sets forth four criteria that the department must prove for the trial court to find parental misconduct or inability. The four criteria are:

(i) The child is a deprived child, as such term is defined in Code Section 15-11-2;

(ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived;

(iii) Such cause of deprivation is likely to continue or will not likely be remedied; and

(iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.

OCGA § 15-11-94 (b) (4) (A). As shown below, although the four criteria are separately listed, often they overlap, thus allowing evidence displaying one of the criteria to prove or at least partially prove one or more of the other criteria.

(a) *Deprivation*. To show that a child is a deprived child, the relevant Department of Family and Children Services must present evidence that the child:

(A) Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals;

(B) Has been placed for care or adoption in violation of law;

(C) Has been abandoned by his or her parents or other legal custodian; or

(D) Is without a parent, guardian, or custodian.

OCGA § 15-11-2 (8). Most parental termination cases (including the case at bar) focus on subsection (A), namely whether the child is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals.

The first difficulty these cases present is determining *when* the deprivation must be shown. The statute provides that the department must show that "[t]he child *is* a deprived child." (Emphasis supplied.) OCGA § 15-11-94 (b) (4) (A) (i). The statute's use of the present tense clearly requires that the juvenile court find, with respect to each deprivation order entered, that the child is deprived at the time of that order. In other words, the juvenile court must make a finding of current deprivation. With respect to an initial finding of deprivation, current deprivation means that the child is deprived while in the custody of the parents. Where the child is

removed from parental custody, however, the department may prove current deprivation in subsequent proceedings by showing that, if the child were returned to the parents at the time of the hearing, he or she would be deprived. See *In the Interest of A. K.*[2] (whether child "would be deprived if she were living with the mother").

Here, the Department argues that because the mother failed to appeal prior deprivation orders, this criterion is already established, and this Court should therefore proceed directly to other criteria. The Department misunderstands the law. Responding to this same argument in *In the Interest of R. C. M.*,[3] we held:

> This truncated analysis overestimates the effect of unappealed deprivation orders. An unappealed order adjudicating a child deprived does indeed bind a parent to the finding that *at the time of the order* the child was deprived for the reasons given in the order. And where the Department shows that the conditions upon which an earlier finding of deprivation was based still exist at the time of the hearing on the termination petition, the fact that the parent did not appeal the earlier deprivation order will preclude the parent from challenging the allegation of current deprivation. But OCGA § 15-11-94 (b) (4) (A) requires the juvenile court to determine whether "(t)he child *is* a deprived child" — that is, at the time of the hearing on the petition for termination of parental rights — not whether the child *has ever been* a deprived child. In this case, the father's inability that supported earlier the initial finding of deprivation, that is, his absence due to incarceration, no longer existed at the time of the hearing on the termination petition. As a result, the father's failure to appeal the earlier deprivation orders did not preclude him from challenging the juvenile court's finding that the children were deprived at the time of the hearing on the termination petition. We remind all petitioners, juvenile courts, and our brethren on this Court to give due consideration to all the statutory elements in this process and not to presume that a child is deprived based on the faulty premise, "once deprived, always deprived."

(Citations and punctuation omitted; emphases in original.)

Applying this analysis, this Court has repeatedly held that unappealed deprivation orders bind the parents insofar as they establish that the existence of certain conditions (at the times those

---

[2] *In the Interest of A. K.*, 272 Ga. App. 429, 434 (1) (a) (612 SE2d 581) (2005).
[3] *In the Interest of R. C. M.*, 284 Ga. App. 791, 798 (III) (1), n. 6 (645 SE2d 363) (2007).

orders were entered) constituted a clear and convincing showing that the child was deprived as defined under the law; but only upon a *further* showing by the department that the conditions upon which this finding was based *still exist* at the time of the hearing on the termination petition will this criterion be met. See, e.g., *In the Interest of D. W.*;[4] *A. G.*, supra, 293 Ga. App. at 386 (1); *In the Interest of B. T.*[5]

Here, the Department met this burden. The most recent deprivation order, entered in September 2007, found that the children were deprived for the following reasons: "The mother is not in treatment for her drug issues, has no stable housing, and has paid no support." At the termination hearing held in March 2008, the Department presented evidence that the mother still had not received the mandated treatment for her drug abuse, that she had admitted having no suitable housing for the children at the time the petition was filed in January 2008, that her post-petition acquisition of adequate housing was based solely on the ongoing good graces of a boyfriend — who remained married to someone else — and that she had paid no money in child support over the two and one-half years since the Department took custody of the children. Thus, this criterion was met.

(b) *Lack of parental care or control as cause of the deprivation.* The second criterion requires the Department to show that "[t]he lack of proper parental care or control by the parent in question is the cause of the child's status as deprived." OCGA § 15-11-94 (b) (4) (A) (ii). Just as the statute's use of the present tense requires a showing of current deprivation, so too it requires the Department to show a current lack of parental control. With respect to deprivation orders entered after the parent has lost custody of the child, the Department must prove that, *if returned to the parent as of the date of the hearing*, the child would return to a state of deprivation because of the parent's lack of proper parental care or control. In making this determination, the juvenile court focuses on the various factors as set forth in OCGA § 15-11-94 (b) (4) (B) and (b) (4) (C).

The factors relevant to this case are found in OCGA § 15-11-94 (b) (4) (C), which provides that

> where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent

---

[4] *In the Interest of D. W.*, 294 Ga. App. 89, 92 (1) (a) (668 SE2d 533) (2008).

[5] *In the Interest of B. T.*, 291 Ga. App. 604, 607 (a) (662 SE2d 656) (2008).

without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights:

. . .

(ii) To provide for the care and support of the child as required by law or judicial decree; and

(iii) To comply with a court ordered plan designed to reunite the child with the parent or parents. . . .

Here, the mother admittedly has yet to pay any child support, even though the Department has had custody of the children for two and one-half years and even though she acknowledged in writing that she was obligated to do so. See *In the Interest of T. H.*[6] ("Georgia law requires a parent to financially support his or her child while the child is in foster care, even in the absence of a court order and even if unable to earn income") (punctuation omitted). Although the mother did comply with other aspects of the case plan, she did not undergo the court-mandated drug treatment nor did she obtain even a semblance of suitable housing or income for two years until after the petition was filed. Moreover, her current housing and income obtained since the filing of the petition were contingent on the new and somewhat uncertain relationship with her current boyfriend (who remained married to another woman). Thus, the evidence supported a finding that the second criterion was met.

(c) *Cause of the deprivation is likely to continue.* The Department must then show the third factor: "Such cause of deprivation is likely to continue or will not likely be remedied." OCGA § 15-11-94 (b) (4) (A) (iii). This criterion focuses on whether, as of the date of the termination hearing, the parent is likely to continue conduct causing deprivation. If over the intervening months or years since she originally lost custody of the children, the mother has not modified the behavior that led to the original and continued removal of the children, then a court could find that the mother will continue to so act in the future and therefore that the cause of the deprivation will likely continue. See *In the Interest of M. J. G.*[7] ("the juvenile court may consider the parent's past conduct in determining whether deprivation is likely to continue") (punctuation omitted). Thus, "[r]epeated failure to comply with case plan goals may show that the cause of the deprivation is likely to continue." *A. K.*, supra, 272 Ga. App. at 436 (1) (c). Here, the Department made such a showing.

---

[6] *In the Interest of T. H.*, 290 Ga. App. 421, 425 (1) (c) (659 SE2d 813) (2008).
[7] *In the Interest of M. J. G.*, 288 Ga. App. 754, 755 (655 SE2d 333) (2007).

Nevertheless, the mother points to her recent good fortune of moving in with her new boyfriend as the way to meet the goals of stable housing and income, and therefore argues that the court erred in ignoring this more current, positive evidence. However, "in considering past deprivations compared to present achievements, juvenile courts are entitled to assign much less weight to such assertions of sudden parental fitness when compared to the other evidence." (Punctuation omitted.) *M. J. G.*, supra, 288 Ga. App. at 756. See *In the Interest of S. N.*[8] (juvenile court may find "that the parents' conduct over the years was a better predictor of their future conduct than a few months of partial stability"). Last-minute efforts to obtain stable housing, especially those that take place after the termination petition is filed, "are of questionable significance and sincerity." *In the Interest of H. M.*[9] This is particularly true where such housing depends on the continuation of a relationship with a new boyfriend, who remains married to someone else.

(d) *Likelihood of harm.* This brings us to the fourth criterion, namely whether "[t]he continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-94 (b) (4) (A) (iv). This criterion is most often a syllogism. Since "deprivation" by definition usually means that the child lacks the parental care or control necessary "for the child's physical, mental, or emotional health or morals" (OCGA § 15-11-2 (8) (A)), then the continuation of that deprivation will likely cause "serious physical, mental, emotional, or moral harm to the child." Thus, this fourth criterion is often met by satisfying the previous criteria. See *S. N.*, supra, 291 Ga. App. at 632 (1) (a) ("[t]he same evidence showing that the children's deprivation was likely to continue also supported the court's finding that continued deprivation would cause the children serious physical, mental, or moral harm"). In any case, as with the previous criteria,

> [t]he only logical inquiry as to section (iv) is whether the child *would be* harmed if returned to the parent's care and control, associated environment, and state of deprivation. In other words, although the child was found deprived on the date of the hearing, the question for termination is if the child were returned to the parent's care and associated environment, would the child be harmed thereby?

(Emphasis in original.) *In the Interest of J. K.*[10]

---

[8] *In the Interest of S. N.*, 291 Ga. App. 628, 632 (1) (a) (662 SE2d 381) (2008).

[9] *In the Interest of H. M.*, 287 Ga. App. 418, 421 (1) (651 SE2d 527) (2007).

[10] *In the Interest of J. K.*, 278 Ga. App. 564, 567 (1) (629 SE2d 529) (2006).

Given that the mother failed to address her problem with the use of illegal drugs and that she otherwise failed to take the steps necessary to reunite with [the children], the evidence was sufficient to demonstrate that [the children]'s continued deprivation will cause or will likely cause the child[ren] serious physical, mental, emotional, or moral harm.

*D. W.*, supra, 294 Ga. App. at 93 (1) (d). Additionally, "[i]t is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Punctuation omitted.) *T. H.*, supra, 290 Ga. App. at 426 (1) (d). See *In the Interest of J. J. J.*[11]

In addition to the foregoing, the Department showed by expert testimony that each of the children suffered from serious emotional problems arising out of their mother's refusal to take the steps necessary to re-unite with them. The children's worst behavior manifested itself following visits with the mother. Evidence supported the juvenile court's finding that this fourth criterion was met.

(e) *Best interests of the children.* We also find here that the evidence discussed above supported the juvenile court's determination that the termination of the mother's parental rights was in the children's best interests "considering their physical, mental, emotional and moral condition and their need for a secure and stable home." (Punctuation omitted.) *T. H.*, supra, 290 Ga. App. at 426 (2). See *In the Interest of R. S.*[12] ("[t]he same factors that show the existence of parental misconduct or inability may also support the juvenile court's finding that terminating the parent's rights would be in the child's best interest") (punctuation omitted).

2. The mother asserts that the juvenile court denied her the statutory right to counsel as set forth in OCGA § 15-11-6 (b), which provides:

Except as otherwise provided under this article, a party is entitled to representation by legal counsel at all stages of any proceedings alleging . . . deprivation and if, as an indigent person, a party is unable to employ counsel, he or she is entitled to have the court provide counsel for him or her. If a party appears without counsel, the court shall ascertain whether such party knows of his or her right to counsel and to be provided with counsel by the court if he or she is an indigent person. The court may continue the proceeding to

---

[11] *In the Interest of J. J. J.*, 289 Ga. App. 466, 470 (657 SE2d 588) (2008).
[12] *In the Interest of R. S.*, 270 Ga. App. 810, 812 (608 SE2d 286) (2004).

enable a party to obtain counsel and shall provide counsel for an unrepresented indigent person upon the request of such a person.

Interpreting this statute, we have held that the juvenile court must conduct a two-part inquiry when a parent appears without counsel at a termination hearing. After informing the parent of his or her right to counsel and to appointed counsel if indigent, the court must inquire whether the parent is indigent as defined under OCGA § 15-11-6 (a) ("[a]n indigent person is one who at the time of requesting counsel is unable without undue financial hardship to provide for full payment of legal counsel and all other necessary expenses for representation"). See *In the Interest of A. M. A.*[13] Here, the mother had earlier been found indigent and had been appointed counsel, who represented her in many of the earlier deprivation proceedings concerning the children. Moreover, the Department was alleging that she lacked sufficient income to support the children. Nevertheless, when the mother appeared at the termination hearing without counsel, the juvenile court here made no inquiry whatsoever into her indigent status, but rather focused only on her failure to contact the court ahead of time to request counsel. The entire colloquy was as follows:

> THE COURT: Okay, let me address, first, to the parents, do each of you understand that you have the right to have a lawyer represent you?
> [MOTHER]: (Non-verbal response.)
> THE COURT: You have to answer out loud, please. Do y'all understand that?
> [MOTHER]: Yes, sir.
> [FATHER]: Yes, sir.
> THE COURT: Do you understand that if you cannot afford a lawyer and if you qualify under the guidelines, the County would provide one to you?
> [MOTHER]: Yes, sir.
> THE COURT: Do you want a lawyer?
> [MOTHER]: We're going to need one.
> THE COURT: Well, the paperwork you were served with notified if you wanted a lawyer to contact the Court. Did you do that?
> [MOTHER]: No, sir.

---

[13] *In the Interest of A. M. A.*, 270 Ga. App. 769, 775 (3) (607 SE2d 916) (2004).

THE COURT: Why not?

[MOTHER]: Well, we had the other court-appointed lawyer, and they said that he —

THE COURT: Well, this is a new case though. This is the termination of parental rights case. And it says if you want a lawyer you have to contact the Court, and y'all did not do that.

[MOTHER]: Okay.

THE COURT: Any reason you did not do it?

[MOTHER]: I've been working two jobs.

THE COURT: I'm not going to provide you a lawyer. If you don't —

[MOTHER]: Okay.

THE COURT: I'm just not going to provide it.

Thus, when the mother requested counsel, the court did not inquire into her financial status but simply found that she had waived counsel by failing to make a pre-trial request to the court clerk. This was clear error. As stated in the statute, "[t]he court . . . shall provide counsel for an unrepresented indigent person upon the request of such a person," if such parent appears without counsel. OCGA § 15-11-6 (b). The statute does not condition the right to counsel on pre-trial contact with the court.

If, however, the court finds a parent to be nonindigent, the second required inquiry is whether the parent waived the right to a retained attorney by failing to use reasonable diligence to obtain the services of an attorney. *A. M. A.*, supra, 270 Ga. App. at 776 (3). In this regard, "[w]aiver will not be lightly presumed, and a trial judge must indulge every reasonable presumption against waiver." (Punctuation omitted.) Id.

> Thus, when presented with a non-indigent defendant who has appeared for trial without retained counsel, the trial judge has a duty to delay the proceedings long enough to ascertain whether the defendant has acted with reasonable diligence in obtaining an attorney's services and whether the absence of an attorney is attributable to reasons beyond the defendant's control.

(Punctuation omitted.) Id. A "limited inquiry" will not suffice, as the juvenile court has an "affirmative duty of determining on the record whether appellant exercised reasonable diligence in attempting to retain trial counsel." (Punctuation omitted.) Id.

Here, the court only inquired as to why the mother did not respond to the invitation in the court administrator's cover letter

(accompanying her summons and termination petition), which letter invited her to "please contact this office" if she wished to "have an attorney represent you." This line of inquiry would appear irrelevant to the question of reasonable diligence in obtaining a private attorney, as there would be no need to contact the court administrator before retaining a private attorney. Moreover, contrary to the statement of the court at the hearing, this letter did not mandate that "if you want a lawyer you *have to* contact the Court. . . ." (Emphasis supplied.) Rather, it was worded in the form of an invitation to do so. And, contrary to the written finding of the juvenile court, the separate summons and process did not contain any additional language notifying the mother of a need to contact the court in order to receive legal representation. Only the cover letter made reference to such, and even then it was only an invitation. Accordingly, as in *A. M. A.*, supra, 270 Ga. App. at 776, we hold that such an inquiry did not satisfy the second part of the required court determination, particularly where it was apparent that the mother believed that her previous appointed counsel from the prior deprivation proceedings was going to represent her at the termination hearing also.

In the present case, the transcript is replete with instances of harm caused by the mother's lack of counsel. First, beyond calling the mother for cross-examination, the Department called the drug counselor, the domestic violence counselor, the children's therapist, the court appointed special advocate ("CASA"), the caseworker, and a foster parent, and then rested its case. *The mother did not pose a single cross-examination to any of these witnesses.* Second, the Department asked leading questions of its witnesses on direct, with no objection by the mother. Third, when asked to present her case, the mother called only her boyfriend and asked him only two questions (with no follow-up questions following the Department's lengthy cross-examination of him). She presented no further evidence. Fourth, after inviting and listening to closing arguments by the Department and the CASA, the court made no similar invitation to the mother, who accordingly gave no closing argument.

As stated in *A. M. A.*, the fact that there is sufficient evidence to support the termination of appellant's parental rights

> does not relieve the juvenile court of its obligation to determine whether trial counsel should have been appointed for appellant. The court's limited inquiry, together with its failure to ascertain appellant's financial status, compel us to vacate the judgment of the juvenile court and remand the case.

Id. at 776 (3). On remand, the trial court must determine, on the record, whether appellant was indigent such that counsel should have been appointed to her. If the court finds that she was indigent, the court should order a new hearing on the termination petition.

If the court finds she was nonindigent, the court must determine, on the record, whether she waived the right to counsel by failing to use reasonable diligence to obtain the services of private counsel. If the court finds that she did not waive the right to counsel, the trial court must order a new hearing on the termination petition. If, on the other hand, the trial court determines that appellant waived her right to counsel, it may re-enter its original judgment. See *A. M. A.*, supra, 270 Ga. App. at 776-777 (3).

*Judgment vacated and case remanded with instruction. Adams and Doyle, JJ., concur.*

DECIDED FEBRUARY 18, 2009.

*Alex L. Dixon*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Hunnicutt & Taylor, James T. Hunnicutt*, for appellee.