680 S.E.2d 532 (2009)
In the Interest of K.R. et al., children.
No. A08A1678.
Court of Appeals of Georgia.
June 18, 2009.
*533 Lori B. Duff, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Prior, Daniel & Wiltshire, Lee R. Moss, Melanie R. Metcalf, Athens, for appellee.
BLACKBURN, Presiding Judge.
Following the termination of her parental rights to K.R. and T.R., the mother of these children appeals, challenging the sufficiency *534 of the evidence. Because the evidence amply supported the juvenile court's findings, we affirm.
Viewed in favor of the juvenile court's judgment, In the Interest of A.G.,[1] the evidence shows that in November 2005, the Walton County Department of Family and Children Services ("DFACS") received custody of then four-year-old K.R. and one-year-old T.R., who had been abused by their caretaker relatives. Their mother stipulated that she could not care for them, as she was struggling with unstable housing, inadequate parenting skills, and domestic violence problems. The court ordered a case reunification plan that addressed these issues and also the mother's ongoing drug abuse problem. Unfortunately, the mother did not comply with the plan, relapsing into drug use, losing several jobs, moving numerous times, and failing to make all required child support payments.
At a hearing in August 2007, DFACS sought to terminate the mother's and the father's parental rights, succeeding only as to the father (who was abusive and on drugs). In its unappealed order, the juvenile court found the children deprived but did not terminate the mother's rights. The court did order that, to avoid termination, the mother was required to complete, within six months, the following requirements of her case plan: (i) the mother had to undergo regular drug tests, with results showing she was drug-free; (ii) the mother had to maintain stable housing and utilities without assistance from friends or family; (iii) the mother had to maintain her current employment; (iv) the mother had to attend a Narcotics Anonymous ("NA") meeting each week; and (v) the mother had to pay child support and satisfy the arrearage in these payments. Within the first three months, the mother twice tested positive for cocaine use, lost one of her two jobs, relied on her boyfriend to pay the rent, was without electricity, and attended no NA meetings.
In December 2007, DFACS filed a second petition to terminate her parental rights, resulting in a hearing that took place just over six months after the August order. As a result of that hearing, the court terminated the mother's rights, which termination she now appeals.[2] She challenges only the sufficiency of the evidence.
The standard of review is clear.
In reviewing a juvenile court's decision to terminate parental rights, we view the evidence in the light most favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody should be terminated. In so doing, we do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.
A.G., supra, 293 Ga.App. at 383, 667 S.E.2d 176.
In a termination of parental rights case, OCGA § 15-11-94(a) requires the juvenile court to consider whether there is clear and convincing evidence of parental misconduct or inability as provided in subsection (b) of that Code section. If such is shown, then the court considers whether termination of parental rights is in the best interest of the child.
1. Subsection (b) of the statute sets forth four criteria that must be proven for the trial court to conclude that parental misconduct or inability is shown. Although the four criteria are separately listed, often they overlap, thus allowing evidence displaying one of the criteria to prove or at least partially prove one or more of the other criteria. The four criteria are:
(i) The child is a deprived child, as such term is defined in Code Section 15-11-2;
(ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived;
(iii) Such cause of deprivation is likely to continue or will not likely be remedied; and

*535 (iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.
OCGA § 15-11-94(b)(4)(A).
(a) Deprivation. To show that a child is a deprived child under the circumstances here, DFACS was required to present evidence that the child "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals...." OCGA § 15-11-2(8)(A).
As explained in In the Interest of P.D.W.,[3] where the child has been in DFACS's care, the correct inquiry is whether the child would be deprived if returned to the parent's care and control as of the date of the hearing. Here, DFACS argues that because the mother failed to appeal prior deprivation orders, this criterion is already established, and that this Court should therefore proceed directly to other criteria. DFACS misapprehends the law. Responding to this same argument in In the Interest of R.C.M.,[4] we held:
This truncated analysis overestimates the effect of unappealed deprivation orders. An unappealed order adjudicating a child deprived does indeed bind a parent to the finding that at the time of the order the child was deprived for the reasons given in the order. And where the Department shows that the conditions upon which an earlier finding of deprivation was based still exist at the time of the hearing on the termination petition, the fact that the parent did not appeal the earlier deprivation order will preclude the parent from challenging the allegation of current deprivation. But OCGA § 15-11-94(b)(4)(A) requires the juvenile court to determine whether "[t]he child is a deprived child" that is, at the time of the hearing on the petition for termination of parental rightsnot whether the child has ever been a deprived child. In this case, the father's inability that supported earlier the initial finding of deprivation, that is, his absence due to incarceration, no longer existed at the time of the hearing on the termination petition. As a result, the father's failure to appeal the earlier deprivation orders did not preclude him from challenging the juvenile court's finding that the children were deprived at the time of the hearing on the termination petition. We remind all petitioners, juvenile courts, and our brethren on this Court to give due consideration to all the statutory elements in this process and not to presume that a child is deprived based on the faulty premise, "once deprived, always deprived."
(Citations and punctuation omitted; emphases in original.)
Based on this analysis, this Court has repeatedly held that unappealed deprivation orders are binding on the parent insofar as they establish that the existence of certain conditions (at the times those orders were entered) constituted a binding showing that the child was deprived as defined under the law; but only upon a further showing by the department that the conditions upon which this finding was based still exist at the time of the hearing on the termination petition will this criterion be met. See, e.g., P.D.W., supra, 296 Ga.App. at 192-193(1)(a), 674 S.E.2d 338; In the Interest of D.W.;[5]A.G. supra, 293 Ga.App. at 386(1), 667 S.E.2d 176; In the Interest of B.T.[6]
Here, DFACS did just that. The most recent deprivation order in August 2007 found that the children were deprived due to inadequate housing and the mother's failure to provide adequate support for them due to her unstable or irregular employment. The court modified the case plan and expressly ordered the mother to comply with five directives for the following six months to avoid termination: (i) the mother was to be tested regularly for drugs and had to test drug-free; (ii) the mother had to maintain stable housing *536 and utilities without assistance from others; (iii) the mother was to maintain her current employment; (iv) the mother was to attend an NA meeting each week; and (v) the mother was to pay child support and satisfy the arrearage in these payments.
At the termination hearing six months later, DFACS presented evidence that the mother had failed to comply with these five directives. She had twice tested positive for cocaine use during that period. She had to receive financial assistance from her boyfriend and the children's father to pay the rent, she was without electricity due to nonpayment for five of the six months, and she even had to receive family assistance to pay for her groceries. She lost one of her two jobs. She attended no NA meetings. And she failed to bring her child support arrearage current.
Thus, the conditions leading to the prior unappealed finding of deprivation continued to exist. Moreover, evidence showed that the conditions had indeed worsened, in that the mother was considering inviting the children's father back into her home (even though he had received no treatment for the abuse and drug problems that had led to the termination of his parental rights), she had allowed her stepbrother and mother to use illegal drugs in her home, and she was associating with other illegal drug users while they used those drugs in her presence. Deprivation was shown.
(b) Lack of parental care or control as cause of the deprivation. The second criterion now comes into play. DFACS had to show that "[t]he lack of proper parental care or control by the parent in question is the cause of the child's status as deprived." OCGA § 15-11-94(b)(4)(A)(ii). The question is whether, "if returned to the parent as of the date of the hearing, the child would return to a state of deprivation because of the parent's lack of proper parental care or control. In making this determination, the juvenile court focuses on the various factors as set forth in OCGA § 15-11-94(b)(4)(B) and (b)(4)(C)." (Emphasis in original.) P.D.W., supra, 296 Ga.App. at 193(1)(b), 674 S.E.2d 338.
The factors relevant to this case are found in OCGA § 15-11-94(b)(4)(C), which provides that
where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights:
* * * * * *
(ii) To provide for the care and support of the child as required by law or judicial decree; and
(iii) To comply with a court ordered plan designed to reunite the child with the parent or parents....
Here, the mother admittedly has failed to bring her child support arrearage current. Nor did she comply with the other four elements of the case plan as set forth above. Thus, evidence supported a finding that the second criterion was met.
(c) Cause of the deprivation is likely to continue. DFACS was then required to show the third factor: "Such cause of deprivation is likely to continue or will not likely be remedied." OCGA § 15-11-94(b)(4)(A)(iii). "This criterion focuses on whether, as of the date of the termination hearing, the parent is likely to continue conduct causing deprivation." P.D.W., 296 Ga. App. at 194(1)(c), 674 S.E.2d 338. If over the intervening years since the mother lost custody of the children to DFACS, the mother has not overcome the issues that led to the original and continued removal of the children, then a court could find that the mother will continue to so act in the future and therefore that the cause of the deprivation will likely continue. Id. See In the Interest of M.J.G.[7] ("the juvenile court may consider the parent's past conduct in determining whether deprivation is likely to continue") *537 (punctuation omitted). "Thus, repeated failure to comply with case plan goals may show that the cause of the deprivation is likely to continue." (Punctuation omitted.) P.D.W., supra, 296 Ga.App. at 194(1)(c), 674 S.E.2d 338. Here, DFACS showed just that.
Nevertheless, the mother points to her maintaining one of her jobs for the last six months and to her maintaining the same residence during those six months (albeit with the assistance of others, contrary to the court's order). However, "in considering past deprivations compared to present achievements, juvenile courts are entitled to assign much less weight to such assertions of sudden parental fitness when compared to the other evidence." (Punctuation omitted.) M.J.G., supra, 288 Ga.App. at 756, 655 S.E.2d 333. See In the Interest of S.N.[8] (juvenile court may find "that the parents' conduct over the years was a better predictor of their future conduct than a few months of partial stability").
The third criterion was met.
(d) Likelihood of harm. This brings us to the fourth criterion, namely whether "[t]he continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-94(b)(4)(A)(iv). This criterion is most often a syllogism in that "deprivation" by definition usually means that the child lacks the parental care or control necessary "for the child's physical, mental, or emotional health or morals" (OCGA § 15-11-2(8)(A)), and therefore the continuation of that deprivation will likely cause serious physical, mental, emotional, or moral harm to the child. P.D.W., supra, 296 Ga.App. at 195(1)(d), 674 S.E.2d 338. "Thus, this fourth criterion is often met by [a showing of] the previous criteria." Id. See S.N., supra, 291 Ga.App. at 632(1)(a), 662 S.E.2d 381 ("[t]he same evidence showing that the children's deprivation was likely to continue also supported the court's finding that continued deprivation would cause the children serious physical, mental, or moral harm"). In any case, as with the previous criteria, "[t]he only logical inquiry as to section (iv) is whether the child would be harmed if returned to the parent's care and control, associated environment, and state of deprivation." (Emphasis in original.) In the Interest of J.K.[9]
Here,
[g]iven that the mother failed to address her problem with the use of illegal drugs and that she otherwise failed to take the steps necessary to reunite with the children, the evidence was sufficient to demonstrate that the children's continued deprivation will cause or will likely cause the children serious physical, mental, emotional, or moral harm.
(Punctuation omitted.) P.D.W., supra, 296 Ga.App. at 196(1)(d), 674 S.E.2d 338. See D.W., supra, 294 Ga.App. at 93(1)(d), 668 S.E.2d 533.
Moreover, "[i]t is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Punctuation omitted.) In the Interest of T.H.[10] See In the Interest of J.J.J.[11] Here, DFACS presented expert evidence to this effect, including that one of these children was a special needs child that would particularly be harmed by instability. While in the more stable environment of foster care, the children had thrived, with better grades in school and fewer emotional problems.
Evidence supported the juvenile court's finding that this fourth criterion was met.
2. We also find here that the evidence discussed above supported the juvenile court's determination that the termination of the mother's parental rights was in the children's best interests "considering their physical, mental, emotional and moral condition and their need for a secure and stable home." (Punctuation omitted.) T.H., supra, 290 Ga. App. at 426(2), 659 S.E.2d 813. See In the *538 Interest of R.S.[12] ("[t]he same factors that show the existence of parental misconduct or inability may also support the juvenile court's finding that terminating the parent's rights would be in the child's best interest") (punctuation omitted). The foster parents, in whose home the children were thriving, desired to adopt them. See In the Interest of B.J.F.[13] (in making a finding that termination was in the best interest of the child, "the court properly considered that the foster home where the child has been living since being placed in DFACS custody has expressed an interest in adopting the child").
Ample evidence supported the juvenile court's termination of the mother's parental rights.
Judgment affirmed.
MILLER, C.J., and ELLINGTON, J., concur.
NOTES
[1] In the Interest of A.G., 293 Ga.App. 383, 667 S.E.2d 176 (2008).
[2] The Supreme Court of Georgia determined that a direct appeal was proper. In the Interest of K.R., 285 Ga. 155, 674 S.E.2d 288 (2009).
[3] In the Interest of P.D.W., 296 Ga.App. 189, 191(1)(a), 674 S.E.2d 338 (2009).
[4] In the Interest of R.C.M., 284 Ga.App. 791, 798(III)(1) n. 6, 645 S.E.2d 363 (2007).
[5] In the Interest of D.W., 294 Ga.App. 89, 92(1)(a), 668 S.E.2d 533 (2008).
[6] In the Interest of B.T., 291 Ga.App. 604, 607(a), 662 S.E.2d 656 (2008).
[7] In the Interest of M.J.G., 288 Ga.App. 754, 755, 655 S.E.2d 333 (2007).
[8] In the Interest of S.N., 291 Ga.App. 628, 632(1)(a), 662 S.E.2d 381 (2008).
[9] In the Interest of J.K., 278 Ga.App. 564, 567(1), 629 S.E.2d 529 (2006).
[10] In the Interest of T.H., 290 Ga.App. 421, 426(1)(d), 659 S.E.2d 813 (2008).
[11] In the Interest of J.J.J., 289 Ga.App. 466, 470, 657 S.E.2d 588 (2008).
[12] In the Interest of R.S., 270 Ga.App. 810, 812, 608 S.E.2d 286 (2004).
[13] In the Interest of B.J.F., 276 Ga.App. 437, 443(2), 623 S.E.2d 547 (2005).