723 S.E.2d 499 (2012)
314 Ga. App. 206
In the Interest of A.E. et al., children.
No. A11A2200.
Court of Appeals of Georgia.
February 17, 2012.
*500 Jana L. Evans, Dallas, for appellant.
Samuel S. Olens, Atty. Gen., Shalen S. Nelson, Sr. Asst. Atty. Gen., Andrea Rebecca Moldovan, Asst. Atty. Gen., Penny Hannah, Atlanta, for appellee.
McFADDEN, Judge.
The mother of minor children S.E., A.E., and J.E. appeals from the termination of her parental rights. Because there is sufficient evidence supporting the termination order, we affirm.
On appeal from an order terminating parental rights, we do not weigh the evidence or determine the credibility of witnesses; rather, we must construe the evidence in the light most favorable to the lower court's judgment and determine if there is clear and convincing evidence from which a rational trier of fact could have found that parental rights have been lost. In the Interest of C.G., 279 Ga.App. 730(1), 632 S.E.2d 472 (2006).
So construed, the evidence shows that S.E. was born in February 2002 and A.E. was born in August 2006. While the mother was pregnant with J.E., who was due to be born in December 2007, the Department of Family and Children Services became involved with the family when a protective order was entered because of the parents' unstable and unsanitary residence, medical neglect, failure *501 to maintain employment, inadequate parenting skills, mental health problems, domestic and substance abuse concerns, and failure to provide necessities to the children. After the mother and father did not comply with the protective order, failing to cooperate with in-home parenting services or to maintain a safe and appropriate home, S.E. and A.E. were removed from the home and placed in the department's custody. In July 2007, after an adjudicatory hearing, the juvenile court ruled that both children were deprived, finding, among other things, that the father was incarcerated on a child molestation charge and that the mother was homeless, unemployed, had no source of income and could not provide for the children's basic needs. The department was unable to find a suitable; or willing relative placement for S.E. and A.E., so they were placed in foster care.
Pursuant to the juvenile court's direction, the mother was given a reunification plan. However, until at least January 2009, she repeatedly failed to comply with the plan, remaining unemployed, having no transportation, failing to engage in services provided by the department, missing parent-aide appointments, continuing to be unable to provide basic necessities for the children, being evicted from residences for lack of payment and failing to maintain residential utilities, having her visitation rights suspended for missing multiple visits with the children, and essentially relying on the children's maternal grandmother to provide both her and newborn J.E. with housing and money from the grandmother's social security disability benefits.
By the time of a hearing in May 2009, the mother showed some improvement and stability, obtaining a job, participating in family therapy and maintaining an appropriate home with the help of her live-in boyfriend. And in July 2009, after she had substantially complied with the reunification plan, S.E. and A.E. were returned to her custody. But by March 2010, the conditions which had led to the initial finding of deprivation recurred, and the juvenile court entered a shelter care order removing all three children from the home and placing them in foster care. After an adjudicatory hearing on March 22, 2010, the juvenile court determined that the children were deprived. The court found, among other things, that the family did not have stable housing, having moved four times in less than a year; that the current home was unsanitary, with feces on the carpet and walls; that the mother was unemployed and was not addressing her mental health issues; and that the children's medical, educational and emotional needs were not being met.
After a hearing on the petition to terminate parental rights, the juvenile court entered an order finding that the children were deprived due to parental misconduct or inability, that the deprivation was likely to continue and be harmful, and that termination of parental rights was in the children's best interests. The mother appeals; the father, who is serving a prison sentence for child molestation and whose rights have also been terminated, is not a party to this appeal.
1. The mother claims that she was not given notice and opportunity to contest nonreunification. However, she has not indicated that this issue was raised in the lower court, and "[i]ssues not raised below will be deemed waived on appeal. [Cit.]" In the Interest of T.C.D., 281 Ga.App. 517, 518, 636 S.E.2d 704 (2006). Moreover, the record shows that after a hearing on April 19, 2010, the court continued the case until May 19, 2010, noting that a nonreunification case plan had been filed and the mother was contesting the issue of nonreunification. The hearing was held on that later date with the mother and her attorney present at the hearing. Thus, contrary to the mother's claim, the record shows that she had notice that the department was seeking nonreunification and had the opportunity to contest the issue. See OCGA § 15-11-58(e).
2. The mother challenges the sufficiency of the evidence supporting the juvenile court's findings that the children are deprived, that the cause of the deprivation is likely to continue, that the continued deprivation is likely to cause serious harm to the children and that termination of parental rights is in the children's best interests. The challenges are without merit.
*502 (a) As the mother acknowledges in her brief, she never appealed the juvenile court order finding that the children were deprived when they came into the department's care in March 2010.
[U]nappealed deprivation orders bind the parents insofar as they establish that the existence of certain conditions (at the times those orders were entered) constituted a clear and convincing showing that the child was deprived as defined under the law; but only upon a further showing by the department that the conditions upon which this finding was based still exist at the time of the hearing on the termination petition will this criterion be met.
(Citations and emphasis omitted.) In the Interest of P.D.W., 296 Ga.App. 189, 192-193(1), 674 S.E.2d 338 (2009).
Here, the department met this burden. As the lower court found, the conditions which authorized the earlier findings of deprivation and removal still exist, with the lack of stable and sanitary housing; the mother's inability to provide for the children and meet their medical, educational and emotional needs; and her failure to adequately address her mental health issues. Thus, this criterion was met. See P.D.W., supra at 193(1), 674 S.E.2d 338.
(b) "As we have held, evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to the parent. [Cit.]" In the Interest of J.S., 292 Ga.App. 86, 89, 663 S.E.2d 793 (2008). In this case, the evidence shows that since the department became involved with the family in 2007, the mother has not held steady employment, and when she did get a job, she quit shortly after the two older children were returned to her custody. As recounted above, she has repeatedly failed to provide for the basic medical, educational and mental health needs of the children; has not established a stable or appropriate home for them; has been evicted from residences and has moved four times since the children were removed from her care in March 2010; and has relied on her own mother's social security benefits to provide for herself and her children.
Although the mother claims that her testimony shows that she has now gained some stability, "the decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) In the Interest of R.N.H., 286 Ga.App. 737, 742(1)(c), 650 S.E.2d 397 (2007). Furthermore, a department case manager testified that she did not think much had changed with the mother. And the mother herself, when asked what was different from her last failed opportunity at parenting the children, testified, "I don't guess there is a difference." Under these circumstances, "there was sufficient evidence to authorize the juvenile court's finding of clear and convincing evidence that the child's deprivation for lack of proper parental care or control is likely to continue[.]" (Citation omitted.) In the Interest of M.J.G., 288 Ga.App. 754, 756, 655 S.E.2d 333 (2007).
(c) Although the mother enumerates as error that there is insufficient evidence that the continued deprivation is likely to cause serious harm to the children, she has offered no argument in support of that enumeration. Regardless, "the same facts that support a juvenile court's conclusion that a child is deprived and that the deprivation is likely to continue if placed with the parent also support a conclusion that continued deprivation would likely cause the child serious harm." (Citations omitted.) In the Interest of K.A.S., 279 Ga.App. 643, 651(1)(d), 632 S.E.2d 433 (2006). Along with the facts recounted above which establish that the children are deprived due to parental neglect and inability and that such deprivation is likely to continue, there is also evidence, as the trial court found, that "the children have behavior issues consistent with chronic neglect," Thus, the finding that the continued deprivation would likely cause the children serious harm is supported by ample evidence.
(d) Likewise, "[t]he same factors which showed the existence of parental misconduct or inability also supported the finding that termination of appellant's parental rights was in the [children's] best interests]. [Cit.]" In the Interest of B.J.F., 276 Ga.App. *503 437, 443(2), 623 S.E.2d 547 (2005). In addition, the department case manager testified that termination is in the best interests of the children due to the extensive instability that they have experienced. And the psychologist who has worked with the family recommended that the mother not regain custody of the children, all of whom have suffered significant mental health issues due to parental neglect. Accordingly, there; is adequate evidence supporting the finding that termination is in the children's best interests.
Judgment affirmed.
PHIPPS, P.J., and ANDREWS, J., concur.